AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

2/8/2021

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

In the Matter of the Use of
*(Briefly describe the property to be searched or identify the person by name and address)*

A CELL-SITE SIMULATOR TO IDENTIFY THE CELLULAR DEVICES CARRIED BY CLEMENTE QUEZADA

Case No. 3:21-MJ-48

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the __Southern__ District of __Ohio__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 846 | conspiracy to possess with intent to distribute and to distribute controlled substances |

The application is based on these facts:
See Attached affidavit of Ryan Fergot

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I, Brent Tabacchi, certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the DEA. See 18 U.S.C. §§ 3122(b), 3123(b).

*Ryan Fergot*
Applicant's signature

Ryan Fergot, SA of the DEA
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __reliable electronic means__ *(specify reliable electronic means)*.

Date: 2-8-21

Judge's signature

City and state: Columbus, Ohio

Chelsey M. Vascura, US Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO IDENTITY THE CELLULAR DEVICES CARRIED BY CLEMENTE QUEZADA | Case No. 3:21-MJ-48<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Ryan Fergot, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique further described in Attachment B, in order to identify the cellular device or devices carried by **Clemente QUEZADA (QUEZADA)** (the "Target Cellular Device"), described in Attachment A.

2.  I am a Special Agent with the United States Drug Enforcement Administration (DEA), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878. The information contained in this Affidavit is either personally known by me or relayed to me by other law enforcement officers involved in this investigation. I have been employed as a Special Agent with the DEA since September 2018. In September 2018, I attended the DEA Academy which consisted of 17 weeks of training in conducting federal drug trafficking investigations; handling confidential sources; conducting undercover operations; conducting mobile, static, foot and electronic surveillance; conducting tactical entry and vehicle arrest operations; using defensive

4

tactics and firearms; as well as additional aspects of conducting DEA lead investigations. I have been assigned to the DEA Dayton Resident Office since April 2019. Prior to employment with the DEA, I was a sworn Law Enforcement Officer of the State of Wisconsin who was charged with the duty to investigate criminal activity and enforce the criminal laws of the State of Wisconsin, and employed by the City of Appleton Police Department from August 2014 to September 2018. During my employment with the Appleton Police Department, I was assigned to the Department's patrol division. During my time as a patrol officer, I conducted retail level drug investigations and I assisted the Appleton Police Department's Community Resource Unit (CRU) which included Narcotics Investigations, Prostitution and Pimping, Human Trafficking, and Criminal Street Gangs.

3. Since the time of my assignment with the DEA, and during time spent as an Appleton Police Officer, I have been involved in narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics, and participated in undercover narcotics purchases. Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived.

4. This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the Target Cellular Device is currently believed to be located inside this District as its user, Clemente QUEZADA, resides in and spends the bulk of his time in southern Ohio. Specifically, information from reliable confidential informant as well as his own recorded statements place him in southern Ohio. Pursuant to Rule 41(b)(2), law

5

enforcement may use the technique described in Attachment B outside the District provided the device is within the District when the warrant is issued.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to possess with intent to distribute controlled substances) have been committed, are being committed, and will be committed by QUEZADA. There is also probable cause to believe that the identity of the Target Cellular Device will constitute evidence of those criminal violations. In addition, in order to obtain additional evidence relating to the Target Cellular Device, its user, and the criminal violations under investigation, law enforcement must first identify the Target Cellular Device. There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning that identifying information.

6. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. *See* 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. *See* 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

1. The United States, including the DEA, is conducting a criminal investigation of Clemente QUEZADA (QUEZADA) regarding possible violations of 21 U.S.C. §§ 846 and 841 (possession with the intent to distribute and to distribute a controlled substance and conspiracy to commit the same); and 21 U.S.C. § 843(b) (use of a communications facility to commit a felony).

2. In late January 2021, a reliable confidential source (CS1)[1] provided information to DRO investigators in regards to an unidentified Hispanic male, only known as "ManMan", whom is assisting a Mexican based drug trafficking organization (DTO) with the distribution of large quantities of fentanyl and methamphetamine in the Dayton Ohio region. As detailed below, investigators were able later to identify the Hispanic male as Clemente QUEZADA (QUEZADA). Furthermore, CS1 informed investigators he/she met with QUEZADA in person and was recruited to assist with finding buyers to purchase fentanyl and methamphetamine from QUEZADA. CS1 advised QUEZADA is supposed to be getting a large shipment of illegal drugs within the next few weeks. In the interim, QUEZADA has access to a large amount of drugs that are being stored in Columbus Ohio. QUEZADA told CS1 that he/she could gain access to the drugs in Columbus, but he/she would have to go through QUEZADA to get it.

3. On or around January 26, 2021, CS1 informed investigators that QUEZADA used cellular telephone number **(937) 219-9324**. CS1 advised that **(937) 219-9324** was the number at which he/she regularly contacted QUEZADA. On February 3, 2020, TFO Andy Leininger submitted an Administrative Subpoena to Sprint for phone toll information regarding **(937) 219-9324**. On the same date, CS1 conducted a recorded phone call to **(937) 219-9324**. The following is a transcription of the recorded phone conversation between CS1 and an individual that CS1 identified as ManMan, *i.e.*, QUEZADA:

QUEZADA: Hello

CS1: What's up Poppy?

---

[1] CS1 has been proven reliable through other DEA investigations. CS1 is working for monetary consideration. CS1 CCH includes: Trafficking in Drugs, Domestic Violence and OVI.

7

QUEZADA: What's up?

CS1: ManMan this is [intentionally omitted].

QUEZADA: (unintelligible) got a new number I see that.

CS1: Yeah yeah you got to rotate them.

QUEZADA: Yeah yeah

CS1: You've been alright?

QUEZADA: Yeah yeah just still waiting man.

CS1: Still waiting?

QUEZADA: Yeah (unintelligible) I'm gonna save this number.

CS1: Ok, that Columbus thing still available?

QUEZADA: Uh, uh I gotta see what's up with it.

CS1: Yeah. Shouldn't be much longer, should it?

QUEZADA: Na, I don't think so, I hope not. If not, they are going to have to wait until I get back.

CS1: Right (overlapping conversation) did you find you a vehicle yet?

QUEZADA: Na na na not yet, I'm doing that when I come back. I'm gonna mess with you on that.

CS1: Ok.

QUEZADA: Yeah yeah.

CS1: Alright, well I was just giving you my new number and checking in with you.

QUEZADA: Alright I appreciate that.

CS1: I'm at the house chillin, ok.

QUEZADA: Alright.

8

4.     After the recorded conversation, TFO Leininger conducted a debrief with CS1. CS1 stated that he/she and QUEZADA spoke in coded language during the call. CS1 advised that QUEZADA had explained that the drug shipment had not arrived yet; CS1 inquired if the drugs in Columbus were still available, to which QUEZADA indicated that he would need to check. QUEZEDA then stated that, if his shipment of drugs did not arrive soon, any drug transaction would have to wait until he gets back. CS1 believed that QUEZEDA was leaving town in the next few days, possibly to travel out of state.

5.     Additionally, on or about February 3, 2021, TFO Leininger spoke with TFO Peterson from DEA Cincinnati. TFO Peterson advised that Cincinnati DEA recently obtained information from a cooperating defendant (CD1)[2] about a Hispanic male, only known as "MeMe", later confirmed to be QUEZADA as detailed below. CD1 informed TFO Peterson that the phone number **(937) 219-9324** belonged to QUEZADA. CD1 stated QUEZADA was expecting a shipment of approximately 100 pounds of methamphetamine and 20 kilograms of fentanyl, to arrive in the Dayton, Ohio, area in the next few weeks. On February 4, 2020, CD1 was shown a driver's license photo of QUEZADA, and CD1 confirmed the picture to be the individual he/she knew as "MeMe".

6.     On February 4, 2021, phone tolls from **(937) 219-9324** were received from Sprint. DRO investigators utilized the toll analysis and subscriber information to identify Sharmaine Turn as the subscriber with her address being listed as 1035 Harvard Ave., Fairborn, Ohio. A query of local law enforcement databases and open source intelligence showed Sharmaine

---

[2] CD1 is providing information for judicial consideration for charges he/she is currently facing. CD1 CCH includes: Possession of Drugs, Domestic Violence and Weapons Under Disability

TURNER as recently residing that 1035 Harvard Ave., Fairborn, Ohio. Through the same databases, QUEZADA was identified as recently living at that address as well. Agents ran **(937) 219-9324** through a database that law enforcement uses to track money transactions through money remitters, such as Western Union. Information was found that showed QEZADA has regularly utilized **(937) 219-9324** and his name to send money via wire transfer to Mexico. Based on training and experience, affiant knows this to be a common method for quickly laundering small amounts of drug trafficking proceeds to Mexico.

7. On February 4, 2021, DRO investigators showed a driver's license photo of QUEZADA to CS1. CS1 was given no other information, other than the photo. CS1 quickly identified the subject as QUEZADA and the individual he/she has been speaking to about illegal drug shipments.

8. On or about February 5, 2021, CS1 advised that QUEZADA contacted CS1 via cellular telephone; QUEZADA indicated his intention to deliver a quantity of controlled substances to CS1 in southern Ohio during the next several days.

9. Based on your Affiant's training and experience and the facts described above, it is common for drugs traffickers to use multiple cell phones to conduct their drug trafficking operations. Further, it is also common for those same drug traffickers to use prepaid cell phones, often providing fictitious names or no names at all. Moreover, based on the information detailed above, investigators know that QUEZADA uses at least one cellular device to engage in drug trafficking activity. Moreover, QUEZADA and the cellular telephone at this time are located in this district.

10

10. In summary, based on the information above, Affiant believes the Target Cellular Device is being used by QUEZADA to further his drug trafficking activities in Ohio, and other yet to be identified locations.

## MANNER OF EXECUTION

1. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

2. To facilitate execution of this warrant, law enforcement may use an investigative device that sends signals to nearby cellular devices, including the Target Cellular Device, and in reply, the nearby cellular devices will broadcast signals that include their unique identifiers. The investigative device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell to communicate with others. Law enforcement will use this investigative device when they have reason to believe that QUEZADA is present. Law enforcement will collect the identifiers emitted by cellular devices in the immediate vicinity of the Target Cellular Device when the subject is in multiple locations and/or multiple times at a common location and use this information to identify the Target Cellular Device, as only the Target Cellular Device's unique identifiers will be present in all or nearly all locations. Once investigators ascertain the identity of the Target Cellular Device, they will cease using the investigative technique. Because there is probable cause to determine the identity of

11

the Target Cellular Device, there is probable cause to use the investigative technique described by the warrant to determine the identity of the Target Cellular Device.

3. The investigative device may interrupt cellular service of cellular devices within its immediate vicinity. Any service disruption will be brief and temporary, and all operations will attempt to limit the interference cellular devices. Once law enforcement has identified the Target Cellular Device, it will delete all information concerning non-targeted cellular devices. Absent further order of the court, law enforcement will make no investigative use of information concerning non-targeted cellular devices other than distinguishing the Target Cellular Device from all other devices.

## AUTHORIZATION REQUEST

4.      Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

5.      I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the person carrying the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

6.      I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to identify the Target Cellular Device outside of daytime hours.

7.      I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of

13

the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

8. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

*Ryan Fergot*

Ryan M. Fergot
Special Agent
Drug Enforcement Administration

Sworn to before me on February __8__, 2021.

_____
HONORABLE CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

14

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B when the officers to whom it is directed have reason to believe that Clemente QUEZADA is present.

15

## ATTACHMENT B

The "Target Cellular Device" is the cellular device or devices carried by Clemente QUEZADA. Pursuant to an investigation of QUEZADA for a violation of Title 21, United States Code, Sections 846 and 841(a)(1), this warrant authorizes the officers to whom it is directed to identify the Target Cellular Device by collecting radio signals, including the unique identifiers, emitted by the Target Cellular Device and other cellular devices in its vicinity for a period of thirty days, during all times of day and night.

Absent further order of a court, law enforcement will make no affirmative investigative use of any identifiers collected from cellular devices other than the Target Cellular Device, except to identify the Target Cellular Device and distinguish it from the other cellular devices. Once investigators ascertain the identity of the Target Cellular Device, they will end the collection, and any information collected concerning cellular devices other than the Target Cellular Device will be deleted.

This warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).